■ EUGENE T. T., Appellant, v EVANGELINE T., Respondent. — In an action to annul a marriage, *inter alia,* on the ground of fraud, plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Westchester County (Coppola, J.), entered April 6, 1981, as granted stated portions of defendant's motion for a protective order. Order modified, by adding a provision that at the oral deposition of defendant, plaintiff may make inquiry as to whether defendant, prior to her first marriage, had an illegitimate child which she gave up for adoption as a result of her mental illness. As so modified, order affirmed insofar as appealed from, without costs or disbursements. In his fourth cause of action, plaintiff seeks annulment of the parties' marriage on the ground of fraud. He claims that prior to defendant's first marriage, she gave birth to an illegitimate child which she surrendered for adoption due to her mental illness. Plaintiff contends that defendant fraudulently concealed this birth and the circumstances which led to the child being surrendered for adoption. Plaintiff further contends that he would not have entered into the marriage had these facts been known to him. As long as the identity of the child is not revealed, plaintiff should be permitted to inquire, at the oral deposition, whether defendant gave birth to an illegitimate child and, if so, whether the child was surrendered for adoption and the circumstances which led to her surrendering the child for adoption. Mollen, P. J., Lazer, Mangano and Brown, JJ., concur.

■ GEORGIOS THEODOROPOULOS, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants. — In a wrongful death action, defendant appeals from a judgment of the Supreme Court, Queens County (Zelman, J.), dated December 28, 1981, in favor of plaintiff, after a jury trial. Judgment reversed, on the law and as a matter of discretion, and new trial granted, with costs to abide the event. The complexity of the factual issues in this lengthy medical malpractice trial (which the jury decided in some two hours) called for particular clarity and accuracy in the court's marshaling of the evidence, and for avoidance of any indication of the court's own opinion as to the facts or the credibility of any of the witnesses (cf. 8 Carmody-Wait 2d, NY Prac, §§ 57:12, 57:13). At bar, however, not only was the court's marshaling of the facts confusing and inaccurate with regard to certain important details, it also manifested mistrust, skepticism, and bias on the part of the court as to the credibility of decedent's treating physician, and additionally, with regard to the testimony of defendant's two other medical witnesses. Included among the inaccuracies were statements by the court that Dr. Buchberg, defendant's chief medical expert witness, admitted that the fact that blood gas studies were not performed during the last 16 hours of decedent's life, and that X rays were not taken of the endotracheal tube *in situ,* constituted departures from proper medical standards of practice, when in fact, Dr. Buchberg testified directly to the contrary. In addition, the trial court's negative review, *inter alia,* of the testimony of Dr. Hart, the treating physician, could not but convey the impression that the court favored plaintiff's case. Furthermore, the court's instructions as to Dr. Hart were susceptible to the interpretation that the court was of the opinion that this particular treating physician was an incompetent practitioner. Suffice it to say that the cumulative effect of these and other errors "tipped the delicate balance so necessary to the preservation of the requirements of a fair trial" and precluded the jury from reaching an objective and impartial verdict (*Gionta v Whyzmuzis,* 44 AD2d 850; see *Coneys v City of New York,* 48 AD2d 651; see, generally, 4 Weinstein-Korn-Miller, NY Civ Prac, pars 4404:15, 4404:17). A new trial is therefore required. Mollen, P. J., Niehoff, Rubin and Boyers, JJ., concur.